# EXHIBIT C

## OWNER'S REPRESENTATIVE AGREEMENT

THIS AGREEMENT made as of the 1st day of November, 2009 between MIDWAY SHOPPING CENTER L.P., having offices at c/o Midway Shopping Center L.P., 1001 Central Park Ave, Scarsdale, New York 10583 ("Owner") and TITH CONSTRUCTION CONSULTANTS, INC., a New York corporation, having offices at 6 Oriole Lane, Cortlandt Manor, NY 10567 ("Owner's Representative").

### WITNESSETH:

1. Owner is the owner of real property located at 1001 Central Park Ave, Scarsdale, New York which Owner has subdivided. This contract is specific to renovating former Linens n'Things to a ShopRite, approximately 70,000 sq. ft. (the "Property").

2. Owner intends to dedicate the Property to ShopRite. The development of the Property for such purposes and the construction of the Property are collectively referred to in this Agreement as the "Project".

3. Owner desires to engage Owner's Representative to assist Owner in overseeing the construction of the Project (the "Work") and Owner's Representative desires to accept such appointment.

NOW, THEREFORE, in consideration of the mutual covenants herein contained, Owner and Owner's Representative hereby agree as follows:

1. **Appointment.** Owner hereby engages Owner's Representative to assist Owner in overseeing the Work in accordance with the terms and conditions set forth in this Agreement, and Owner's Representative hereby accepts such engagement. Owner and Owner's Representative acknowledge and agree that Owner's Representative's relationship to Owner shall be that of an independent contractor and not of a servant, agent or employee.

2. **Duties of Owner's Representative.**

Owner's Representative shall:

2.1 Perform on-site observations of the progress and quality of the Work as may be reasonably necessary to determine in general, if the Work is being performed in a manner such that the Work when completed will be in conformance with the plans and specifications for the Work as well as the contracts entered into with the contractor(s) (the "Contractor") performing the Work (the "Contract Documents").

2.2 Coordinate with the architect ("Architect") and engineers.

2.3 Attend weekly job site meetings with the Contractor and Owner.

2.4 Notify the Owner if, in Owner's Representative's opinion, the Work does not conform to the Contract Documents or requires special inspection or testing.

2.5 Monitor the Contractor's construction schedules on an ongoing basis and alert the Owner to conditions that may lead to delays in completion of the Work.

2.6 Receive and respond to requests from the Contractor for information and, when authorized by the Owner, provide interpretations of the Contract Documents.

Error! Unknown document property name.

2.7   Receive and review requests for changes by the Contractor, and submit them, together with recommendations, to the Owner.

2.8   Attend meetings as directed by the Owner and report to the Owner on the proceedings.

2.9   Oversee construction means, methods, techniques, sequences or procedures and safety precautions and programs in connection with the Work.

2.10   Review and advise Owner about certificates for payment and certificates of substantial completion.

2.11   Follow up on punch list items and other unfinished Work and requirements to achieve final completion of the Work.

2.12   Review of drawings, specifications, addenda, requests for change orders and other modifications and make recommendations to Owner in connection therewith.

2.13   Order the Contractor to stop the Work or any portion thereof, if required by the Owner.

2.14   Perform such additional services as are requested by Owner.

3.   **General.**

3.1   Owner's Representative shall visit the site at least three times per week and shall be responsible for assisting Owner in the administration of the Contract. The rights, responsibilities and obligations of the Architect as described in the Owner-Architect Agreement shall not be modified by the furnishing of such Owner's Representative.

3.2   Owner's Representative shall communicate with the Architect and Contractor under the direction of the Owner and with Owner's full knowledge and consent.

4.   **Term.**   The term of this Agreement shall commence as of November 1, 2009 and terminate on the date the Work achieves substantial completion. Notwithstanding the foregoing, Owner shall have the right to terminate this Agreement on sixty (60) days' notice to Owner's Representative at any time during the term, and upon payment of the amount of the Representation Fee due through such early termination date, neither party shall have any rights or responsibilities under this Agreement, except as set forth in Article 7.

5.   **Compensation of Owner's Representative.**   As complete compensation to Owner's Representative for the full and faithful performance of its duties under this Agreement, Owner shall pay Ten Thousand and 00/100 ($10,000.00) Dollars per month to Owner's Representative during the term hereof (the "**Representation Fee**").

6.   **Insurance.**   Owner's Representative shall maintain: (i) commercial liability insurance (including broad form contractual liability) in the amount of Two Million ($2,000,000) Dollars, combined single limit per occurrence, covering personal injury, bodily injury and property damage; and (ii) automobile liability insurance with a combined single limit of at least One Million ($1,000,000) Dollars for bodily injury, including death, to any one person and property damage. Any portion of the foregoing coverage limits may be satisfied by an umbrella policy and/or blanket policy. The insurance coverage afforded under such policies shall be primary

to any insurance carried independently by the "Owner Parties" (as hereinafter defined). Owner's Representative shall specifically insure the indemnities set forth in Section 7.2 and shall include the Owner Parties as additional insureds in all policies.

7. **Indemnities.**

7.1 Owner agrees to defend, indemnify and hold Owner's Representative and its officers, directors, employees, agents and representatives (the "**Owner's Representative Parties**") free and harmless from damages or injuries to person or property by reason of any cause whatsoever either in and about the Property or elsewhere when Owner's Representative is carrying out the provisions of this Agreement or acting under the express direction of Owner; provided, however, that Owner shall not defend, indemnify or hold the Owner's Representative Parties harmless and this Section 7.1 shall neither apply to nor serve to relieve Owner's Representative from responsibility to Owner for, any claims, damages, liabilities, costs or fees arising or resulting from the gross negligence, fraud, misappropriation of proceeds, and/or willful misconduct of Owner's Representative or of any of the Owner's Representative Parties.

7.2 Owner's Representative shall defend, indemnify and hold Owner and its members, managers, managing members, principals, officers, partners, affiliates, directors, shareholders, employees and agents (the "**Owner Parties**") free and harmless from and against all claims, losses, causes of action damages and liabilities (including all costs and reasonable attorneys' fees) arising out of or resulting from damage to property, or injury to, or death of, persons (including the property and persons of the parties hereto, and their agents, subcontractors and employees) occasioned by or in connection with the gross negligence, fraud, misappropriation of proceeds, and/or willful misconduct of Owner's Representative or any of the Owner's Representative Parties.

7.3 The provisions of this Article 7 shall survive the termination of this Agreement.

8. **Assignment; Successors and Assigns.** This Agreement shall be binding upon and inure to the benefit of the parties hereto and their legal representatives, successors and permitted assigns; provided, however, that this Agreement may not be assigned by Owner's Representative without the prior written consent of the Owner, which consent may be withheld in Owner's sole and absolute discretion. The transfer of a controlling interest of Owner's Representative shall be deemed an assignment of this Agreement for which consent is required. For the purposes of this Agreement, the terms "control" or "controlling interest" shall mean the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of Owner's Representative, whether through the ownership of stock, equity securities, by contract or otherwise.

9. **Licenses.** At its sole expense, Owner's Representative shall at all times maintain any licenses, certificates and permits as may be required for the performance of any of the various duties of Owner's Representative hereunder.

10. **No Partnership; Third Party Beneficiaries.** This Agreement shall not be construed as in any way establishing a partnership, joint venture, express or implied agency, or employer-employee relationship between Owner and Owner's Representative, or as giving Owner's Representative any type of property interest in the Property. None of the obligations hereunder shall run to or be enforceable by any party other than the parties to this Agreement or by a party deriving rights hereunder as a result of an assignment permitted pursuant to the terms hereof.

Error! Unknown document property name.    3

11. <u>No Waiver</u>. Owner shall not be deemed to have consented to or waived any provision of this Agreement unless any purported consent or waiver is expressly set forth in writing and signed by Owner. No consent or waiver by Owner, express or implied, to or of any breach of any covenant, condition, or duty of Owner's Representative shall be construed as a consent to or waiver of any subsequent breach of the same or breach of any other covenant, condition or duty.

12. <u>Owner's Representative's Authority</u>. Owner's Representative represents and warrants to Owner that: (a) it has full power, right and authority to enter into this Agreement and to perform each and all of its duties and obligations hereunder; (b) this Agreement does not contravene any provision of law, indenture or agreement binding on Owner's Representative; and (c) it is fully qualified and licensed, to the extent required by applicable law, to perform all the obligations and duties assumed by Owner's Representative hereunder, and Owner's Representative agrees to comply with all such laws now or hereafter in effect.

13. <u>Notices</u>. Any notice, demand, report, consent, instruction, approval, waiver or other communication (collectively, a "**Notice**") which either party is required or may desire to give to the other party pursuant to this Agreement shall be effective and valid only if in writing, and sent by a national overnight courier service or mailed by registered or certified mail, return receipt requested, postage or delivery charge prepaid, addressed to the other party as follows (or to such other address as either party may designate by notice to the other):

        If to Owner:

        Midway Shopping Center L.P.
        1001 Central Park Avenue
        Scaresdale, New York 10583
        Attention: Lyle Steinberg

If to Owner's Representative:

Tith Construction Consultants, Inc.
6 Oriole Lane
Cortlandt Manor, NY 10567
Att: Stephen O'Donnell

Notices shall be deemed given when received, but if delivery is not accepted or the notice is not deliverable because of a change of address of which Notice was not given in accordance herewith, then Notice will be deemed given on the date delivery is refused or would have been completed.

14. **Owner's Rights**. Nothing contained in this Agreement shall be deemed to limit Owner's right at any time to enter upon or inspect the Property, or to do or perform any matter or thing required of Owner's Representative hereunder in the event of Owner's Representative's failure to do so, and without limitation of its other rights as owner of the Property.

15. **Limitation of Liability**. Anything to the contrary in this Agreement notwithstanding, Owner's Representative agrees that it will look only to Owner's estate and interest in and to the Property for the collection of any judgment or other judicial process requiring the payment of money by Owner in the event of a breach or default by Owner under this Agreement; no other property or assets of Owner or of any partner of Owner or of any member, Owner's Representative, officer, director, stockholder or partner of a partner of Owner, or of any disclosed principal of Owner, shall be subject to levy, execution or other enforcement procedures for the satisfaction of any such judgment or other judicial process. It is intended by the foregoing that neither Owner, nor any Owner Parties, shall have any personal liability hereunder.

16. **Miscellaneous**. This Agreement shall be construed and enforced in accordance with the laws of the State of New York. This Agreement may not be amended, modified, discharged or changed in any respect whatsoever, except by a further agreement in writing duly executed by the parties hereto. All understandings and agreements heretofore had between the parties are merged in this Agreement and any other written agreement(s) made concurrently herewith. Invalidation or unenforceability of any one or more of the provisions of this Agreement shall in no way affect any of the other provisions hereof, which shall remain in full force and effect. This Agreement shall be construed without regard to any presumption or other rule requiring construction against the party causing this Agreement to be drafted. All terms and words used in this Agreement, regardless of the number or gender in which they are used, shall be deemed to include any other number and any other gender as the context may require. The captions or headings of this Agreement are for convenience of reference only, and in no way define, describe, extend or limit the scope or intent of this Agreement or the meaning or intent of any provision hereof.

17. **Attorneys' Fees**. In any action or court proceeding brought by either of the parties hereto against the other to enforce any provision or provisions hereof, for damages by reason of any default hereunder or any breach of the terms, covenants and conditions hereof, for a declaration of such party's rights or obligations hereunder, or for any other judicial remedies, if the final, unappealable order of a court of competent jurisdiction is rendered in favor of one party, then the other party shall pay the reasonable attorneys' fees and disbursements incurred by the prevailing party in connection with such action or court proceeding.

18. **Counterparts.** This Agreement may be executed in as many counterparts as may be convenient or required. It shall not be necessary that the signature of, or on behalf of, each party, or that the signature of all persons required to bind any party appear on each counterpart. All counterparts shall collectively constitute a single instrument. It shall not be necessary in making proof of this Agreement to produce or account for more than a single counterpart containing the respective signatures of, or on behalf of, each of the parties hereto. Any signature page to any counterpart may be detached from such counterpart and thereafter attached to another counterpart identical thereto, without impairing the legal effect of the signatures thereon. Facsimile signatures sent via telecopier or e-mailed as a PDF shall be binding on the party sending the same, with the same effect as original ink signatures.

IN WITNESS WHEREOF, the parties have caused this instrument to be executed the day and year first above written.

OWNER:

Midway Shopping Center L.P.

By: _____/s/ Lyle Steinberg_____
Lyle Steinberg

OWNER'S REPRESENTATIVE:

TITH CONSTRUCTION CONSULTANTS, INC.

By: _____
Name:
Title:

Error! Unknown document property name.   6